1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 DANIEL KAHAKU,                                   No. 2: 20-cv-1807 KJN P

12            Plaintiff,

13      v.                                          ORDER AND FINDINGS AND
                                                    RECOMMENDATIONS
14 K. WALLACE, et al.,

15            Defendants.

16

17      I.      Introduction

18          Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19 to 42 U.S.C. § 1983.  Pending before the court is defendants' summary judgment motion.  (ECF

20 No. 45.)  For the reasons stated herein, the undersigned recommends that defendants' summary

21 judgment motion be denied.

22      II.     Legal Standards for Summary Judgment

23          Summary judgment is appropriate when it is demonstrated that the standard set forth in

24 Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the

25 movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

26 judgment as a matter of law."  Fed. R. Civ. P. 56(a).

27                  Under summary judgment practice, the moving party always bears
                the initial responsibility of informing the district court of the basis
28              for its motion, and identifying those portions of "the pleadings,

1

1
2

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

3   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

4   56(c)). "Where the nonmoving party bears the burden of proof at trial, the moving party need

5   only prove that there is an absence of evidence to support the non-moving party's case." Nursing

6   Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

7   387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

8   committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

9   burden of production may rely on a showing that a party who does have the trial burden cannot

10  produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment

11  should be entered, after adequate time for discovery and upon motion, against a party who fails to

12  make a showing sufficient to establish the existence of an element essential to that party's case,

13  and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.

14  "[A] complete failure of proof concerning an essential element of the nonmoving party's case

15  necessarily renders all other facts immaterial." Id. at 323.

16          Consequently, if the moving party meets its initial responsibility, the burden then shifts to

17  the opposing party to establish that a genuine issue as to any material fact actually exists. See

18  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to

19  establish the existence of such a factual dispute, the opposing party may not rely upon the

20  allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

21  form of affidavits, and/or admissible discovery material in support of its contention that such a

22  dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party

23  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

24  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

25  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

26  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

27  a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

28  (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587; Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

On March 15, 2021, and November 30, 2022 (ECF Nos. 22, 45-3), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

////

////

////

3

1     III.    Plaintiff's Claims

2        This action proceeds on plaintiff's verified complaint filed October 9, 2020, against

3 defendants Wallace, Bustamante, Freitas, Vina, Speer, Canela, Hang and Ellis.  (ECF No. 8.)

4 Plaintiff alleges that defendants retaliated against him for his legal activities.  The alleged

5 deprivations occurred at Mule Creek State Prison ("MCSP").

6        In particular, plaintiff alleges that in October 2016, he filed a lawsuit in this court, case

7 2:16-cv-2395.  (Id. at 5.)  In January 2018, the California Department of Corrections and

8 Rehabilitation ("CDCR") agreed to settle case 2:16-cv-2395.  (Id.)  On or around February 10,

9 2018, plaintiff received legal mail from the Attorney General's Office containing a settlement

10 check.  (Id.)  CDCR staff neglected to remove the check.  (Id.)  Plaintiff later approached

11 defendant Bustamante requesting that the check be processed for deposit into plaintiff's prison

12 account.  (Id.)

13        Plaintiff alleges that defendant Bustamante was made aware that inmate Machado assisted

14 plaintiff with case 2:16-cv-2395.  (Id.)

15        After being notified of plaintiff's success in case 2:16-cv-2395 by defendant Bustamante,

16 the facility sergeant ordered defendant Bustamante to conduct a retaliatory cell search of

17 plaintiff's living quarters.  (Id.)  On February 17, 2018, while plaintiff and inmate Machado were

18 in the dining hall, defendant Bustamante and Officer Young trashed plaintiff's housing unit and

19 confiscated several personal allowable items.  (Id. at 5-6.)  Inmate Machado later asked defendant

20 Bustamante why he trashed his living quarters.  (Id. at 6.)  Defendant Bustamante replied, "Yea,

21 you guys may have been able to collect from us but get used to this.  Somebody wanted us to pay

22 you guys a visit to clean your house."  (Id.)

23        On November 8, 2018, inmate Machado sued defendant Bustamante and Officer Young

24 for the February 17, 2018 retaliatory cell search in case 2:18-cv-2943.  (Id.)  On November 10,

25 2018, plaintiff sued defendant Bustamante and Officer Young for the February 17, 2018

26 retaliatory cell search in case 2:18-cv-3001.  (Id.)

27        On May 18, 2019, defendants Bustamante and Wallace, Sergeant Clay and Officers

28 Aguilar and Walker conducted another retaliatory cell search of plaintiff's living quarters.  (Id.)

Defendants trashed plaintiff's living quarters and confiscated allowable personal property. (Id.) After this search, inmate Machado asked Sergeant Clay why the living quarters were trashed. (Id.) Sergeant Clay responded, "you guys keep crying to the courts, we'll keep going into your cell." (Id.)

On December 20, 2019, inmate Machado sued defendants Bustamante, Wallace, Sergeant Clay and Officers Aguiler and Winkler for the May 18, 2019 retaliatory cell search in case 2:19-cv-2566. (Id.) On January 3, 2020, plaintiff sued defendants Bustamante, Wallace, Sergeant Clay and Officers Aguiler and Winkler for the May 18, 2019 retaliatory cell search in case 2:20-cv-0032. (Id. at 6-7.)

On August 9, 2019, defendants Bustamante and Hang directed inmate Machado to submit to restraints. (Id. at 7.) Inmate Machado complied with this order. (Id.) Inmate Machado was escorted and secured in C section lower shower. (Id.) Plaintiff then entered the housing unit where Officer Diemart directed defendant Canela to contain plaintiff in C section lower shower. (Id.)

Plaintiff and inmate Machado then observed defendant Freitas enter the housing unit carrying a tube-like container with a syringe. (Id.) Defendants Freitas, Bustamante, Wallace, Canela and Ellis then entered plaintiff's assigned housing and conducted another retaliatory cell search. (Id.) Plaintiff saw defendant Vina enter his housing unit and join the retaliatory cell search. (Id.)

Plaintiff saw defendant Speer enter his housing area and immediately exit with plaintiff's Panasonic radio. (Id.) Defendants Bustamante, Wallace, Hang, Freitas, Canela, Ellis and Vina trashed plaintiff's assigned housing. (Id.)

After the search, inmate Machado asked defendants Wallace and Bustamante why they conducted the punitive cell search. (Id.) Defendant Wallace responded, "this is how we treat rats. Get used to it." (Id.)

On August 16, 2019, inmate Machado was served with a Rules Violation Report, authored by defendant Vina, charging him with unauthorized possession of drug paraphernalia. (Id.) Defendant Vina alleged that the syringe was discovered in plain sight located at the foot of the

1   upper bunk assigned to inmate Machado.  (Id.)  Defendant Vina did not mention why defendants

2   Bustamante, Wallace, Hang, Freitas, Canela and Ellis (who entered the housing area before

3   defendant Vina) failed to discover the syringe, taking into account the location of the syringe.

4   (Id. at 7-8.)

5        Plaintiff alleges that defendant Freitas planted the syringe on inmate Machado's bunk and

6   removed his identification card from his locker and placed it next to the syringe to secure the

7   charges against inmate Machado.  (Id. at 8.)

8        As legal claims, plaintiff alleges that defendants conducted the August 9, 2019 search in

9   retaliation for the following legal activities:  1) plaintiff's success in case 16-cv-2395;

10  2) plaintiff's filing of case 18-cv-3001 against defendant Bustamante; 3) inmate Machado's filing

11  of case 18-cv-2943 against defendant Bustamante; 4) inmate Machado's filing of case 2:19-cv-

12  1830 against Correctional Officer Aguilar; 5) inmate Machado's filing of grievance MCSP A-19-

13  2006 based on the May 18, 2019 cell search; 6) plaintiff's filing of grievance MCSP A-1862

14  based on the May 19, 2019 cell search; and 7) plaintiff's lawsuit regarding the May 19, 2019 cell

15  search, 2: 20-cv-32.  (Id. at 11-12.)   Plaintiff also alleges that defendants conspired to retaliate

16  against him.

17      IV.    Defendants' Statement of Undisputed Facts

18       In the reply to plaintiff's response to defendants' statement of undisputed facts, defendants

19  observe that plaintiff failed to cite evidence in support of several of his claims disputing

20  defendants' undisputed facts.  In light of the Ninth Circuit's directive that a document filed pro se

21  be construed liberally, the undersigned shall strive to resolve defendants' summary judgment

22  motion on the merits.  Estelle v. Gamble, 429 U.S. 97, 106 (1976) (document filed pro se is "to be

23  liberally construed"); Erickson v. Pardus, 551 U.S. 89, 94 (2007); Fed. R. Civ. P. 8(f) ("All

24  pleadings shall be so construed as to do substantial justice.").  Therefore, while some of plaintiff's

25  responses to defendants' undisputed facts may fail to cite specific evidence, the undersigned

26  considers the evidence submitted by plaintiff in evaluating the merits of defendants' proposed

27  undisputed facts.

28  ////

For the reasons discussed herein, the undersigned finds that defendants' undisputed facts nos. 1-15, 20, 21, 27 and 29 are undisputed.  For the reasons stated herein, the undersigned finds that defendants' undisputed facts nos. 16-19, 22-26, 28, 30-34 are disputed.

A.  Undisputed Facts

Undisputed Fact No. 1:  At all relevant times, plaintiff was housed at MCSP.  (ECF No. 45-2 at 1 (defendants' undisputed fact no. 1); ECF No. 48-2 at 8 (plaintiff's response).)

Undisputed Fact No. 2:  At all relevant times, defendants Wallace, Bustamante, Freitas, Hang, Ellis, Canela, Vina and Speer were employed as correctional officers at MCSP.  (ECF No. 45-2 at 1 (defendants' undisputed fact no. 2); ECF No. 48-2 at 8 (plaintiff's response).)

Undisputed Fact No. 3:  Prior to filing the instant action, plaintiff filed three lawsuits regarding allegedly retaliatory cell searches and unlawful removal from "CALPIA" assignment.  (ECF No. 45-2 at 2 (defendants' undisputed fact no. 3); ECF No. 48-2 at 3 (plaintiff's response); ECF No. 49-2 at 2 (defendants' reply).)

Undisputed Fact No. 4:  In October 2016, plaintiff brought a lawsuit, case no. 2:16-cv-2395, alleging retaliation which settled in January 2018.  (ECF No. 45-2 at 2 (defendants' undisputed fact no. 4); ECF No. 48-2 at 8 (plaintiff's response).)  None of the current defendants were a defendant in that lawsuit.  (Id.)  Defendant Bustamante learned of this lawsuit because plaintiff told him that he (plaintiff) had the check from the settlement and plaintiff asked defendant Bustamante to help him process the check.  (Plaintiff's deposition at p. 19:17-25—18:1-6.)  Plaintiff alleges that defendant Bustamante conducted a retaliatory search of plaintiff's cell on February 17, 2018.  (ECF No. 4502 at 2 (defendants' undisputed fact no. 4); ECF No. 48-2 at 8 (plaintiff's response).)

Undisputed Fact No. 5:  On November 10, 2018, plaintiff filed a lawsuit against defendant Bustamante regarding the February 17, 2018 cell search titled Kahaku v. Bustamante, case 2:18-cv-3001.  (ECF No. 45-2 at 2 (defendants' undisputed fact no.

7

5); ECF No. 48-2 at 8-9 (plaintiff's response).)

Undisputed Fact No. 6:  Plaintiff alleges that on May 18, 2019, defendants Bustamante and Wallace and non-parties Clays, Aguilar and Winkler conducted a retaliatory search of his cell.  There are no allegations that defendant Wallace made any statements during this search indicating that he was aware of plaintiff's legal activity. Plaintiff alleges that after this search, inmate Machado asked Sergeant Clay why the living quarters were trashed.[1]  Sergeant Clay allegedly responded, "you guys keep crying to the courts, we'll keep going into your cell."  Plaintiff does not allege that defendant Wallace was present when Sergeant Clay made this statement.[2]  (ECF No. 45-2 at 2-3 (defendants' undisputed fact no. 6); ECF No. 48-2 at 9 (plaintiff's response).)

Undisputed Fact No. 7:  On January 3, 2020, plaintiff filed a lawsuit against defendants Bustamante and Wallace, and other personnel, regarding the May 18, 2019 cell search, Kahaku v. Clay, 2:20-cv-0032.  (ECF No. 45-2 at 3 (defendants' undisputed fact no. 7); ECF No. 48-2 at 9 (plaintiff's response).)

Undisputed Fact No. 8:  In undisputed fact no. 8, defendants contend that the basis of

---

[1] In the reply, defendants contend that the term "trashed" is vague and not defined.  (ECF No. 49-2 at 3.)  Defendants also argue that plaintiff provides no facts establishing that the cell was "trashed."  (Id. at 3-4.)  For the following reasons, the undersigned finds that defendants' objections regarding plaintiff's use of the term "trashed" to describe the condition of his cell after the May 18, 2019, and August 9, 2019 searches are not well taken.  In relevant part, the Cambridge Dictionary defines "trashed" as to cause a lot of damage to something.  To the extent defendants object to plaintiff's use of the term "trashed" to describe the August 9, 2019 search, the undersigned observes that plaintiff provided the grievance he filed regarding the August 9, 2019 search where he alleged that at the conclusion of the search, "staff left assigned housing in disarray, leaving personal property throughout the cell."  (ECF No. 48-2 at 46.)  In addition, at his deposition, plaintiff testified that after the August 9, 2019 search, everything that was in the lockers was either thrown around on the floor or on the bed.  (Plaintiff's deposition at 33: 3-5.)  Plaintiff testified that mattresses were either on the floor or half on the bed.  (Id. at 33: 7-8.)  Plaintiff testified that, "Blankets and everything was everywhere all over the floor…So all of our property was mixed up, thrown everywhere.  All of our, like, paperwork was [taken] out of the envelopes and thrown everywhere."  (Id. at 7-14)

[2]  Defendants' undisputed fact no. 6 is based on allegations in plaintiffs complaint.  (ECF No. 45-2 at 2-3.)  The undersigned modified defendants' undisputed fact no. 6 to reflect the allegations in the complaint more accurately.  (See ECF No. 8 at 6.)

1    plaintiff's retaliation claim is his allegation that defendants searched his cell on

2    August 9, 2019, out of retaliation for filing previous lawsuits.  (ECF No. 45-2 at 3.)

3    The undersigned clarifies the basis of plaintiff's retaliation claim herein.

4    Undisputed Fact No. 9:  On August 9, 2019, plaintiff was assigned to A Yard Building

5    Three, cell 230.  (ECF No. 45-2 at 3 (defendants' undisputed fact no. 9); ECF No. 48-

6    2 at 9-10 (plaintiff's response).)

7    Undisputed Fact No. 10:  On August 9, 2019, plaintiff was returning to his cell

8    following work.  Plaintiff observed his cellmate, inmate Machado, handcuffed in the

9    upstairs C showers.  Defendant Canela was ordered to, and did, restrain plaintiff, and

10   place him in the locked lower C showers.  (ECF No. 45-2 at 3 (defendants' undisputed

11   fact no. 10); ECF No. 48-2 at 10 (plaintiff's response).)

12   Undisputed Fact No. 11:  Plaintiff was restrained in the lower tier on a different level

13   than his cell.  From his vantage point, he could see the front of his cell and maybe a

14   foot or two into his cell.  Plaintiff estimated that his cell was 15 to 20 feet deep.  (ECF

15   No. 45-2 at 3 (defendants' undisputed fact no. 11); ECF No. 48-2 at 10 (plaintiff's

16   response).)

17   Undisputed Fact No. 12:   Plaintiff testified at his deposition that he witnessed

18   defendants Canela, Bustamante, Hang, Wallace and Ellis going in and out of his cell.

19   Plaintiff allegedly saw defendant Freitas approach his cell with a sharps container,

20   then defendant Vina entered the cell, and then defendant Speers.  Plaintiff allegedly

21   witnessed defendant Spears leave with plaintiff's Panasonic radio.  (ECF No. 45-2 at 4

22   (defendants' undisputed fact no. 12); ECF No. 48-2 at 10 (plaintiff's response).)

23   Undisputed Fact No. 13:  Plaintiff alleges that he observed defendant Freitas enter his

24   cell carrying a sharps container with a syringe.  On August 16, 2019, inmate Machado

25   was served with a Rules Violation Report charging him with Unauthorized Possession

26   of Drug Paraphernalia.  Plaintiff was not charged with an infraction report.  (ECF No.

27   45-2 at 4 (defendants' undisputed fact no. 13); ECF No. 48-2 at 10-11 (plaintiff's

28   response).)

9

1      <u>Undisputed Fact No. 14:</u>  Plaintiff alleges that following the search, he observed

2      inmate Machado approach defendants Bustamante and Wallace and ask what the

3      search was about.  Defendant Wallace responded, "this is how we treat rats.  Get used

4      to it."  (ECF No. 45-2 at 4 (defendants' undisputed fact no. 14); ECF No. 48-2 at 11

5      (plaintiff's response).)

6      <u>Undisputed Fact No. 15:</u>  On August 9, 2019, defendants Wallace, Vina and Freitas

7      were employed as correctional officers at MCSP who were responsible for, among

8      other things, ensuring the safety and security of inmates, staff and the institution.  On

9      that date, they were assigned as search and escort officers (ECF No. 45-2 at 4

10     (defendants' undisputed fact no. 15); ECF No. 48-1 at 11 (plaintiff's response).)

11     <u>Undisputed Fact No. 20:</u>  Defendants Wallace, Vina and Freitas did not order any

12     CDCR personnel to search plaintiff's cell on August 9, 2019.  (ECF No. 45-2 at 5

13     (defendants' undisputed fact no. 20 citing Wallace declaration, ECF No. 45-11 at 2;

14     Vina declaration, ECF No. 45-9 at 2; Freitas declaration, ECF No. 45-10 at 2).)

15        While plaintiff disputes defendants' claim that defendants Wallace, Vina and

16     Freitas did not order any CDCR personnel to search his cell on August 9, 2019, he

17     offers no evidence supporting this claim.  (ECF No. 48-2 at 14.)  The undersigned can

18     find no evidence in the record demonstrating that defendants Wallace, Vina or Freitas

19     ordered any CDCR personnel to search plaintiff's cell on August 9, 2019.

20        In undisputed fact no. 20, defendants also contend that defendants Wallace, Vina

21     and Freitas did not take any retaliatory actions toward plaintiff as a basis for or during

22     the search of his cell.  (ECF No. 45-2 at 5.)  Defendants contend that their actions on

23     August 9, 2019, were solely to fulfill their job duties to ensure the safety and security

24     of the inmates, staff and institution in accordance with California Code of Regulations

25     Title 15.  (<u>Id.</u>)  The undersigned discusses these claims herein.

26     <u>Undisputed Fact No. 21:</u>  On August 9, 2019, defendants Hang, Bustamante, Ellis,

27     Canela and Speer were employed as correctional officers at MCSP who were

28     responsible for, among other things, ensuring the safety and security of inmates, staff

and the institution.  (ECF No. 45-2 at 6 (defendants' undisputed fact no. 21 citing Speer declaration, ECF No. 45-7; Hang declaration, ECF No. 45-6; Ellis declaration, ECF No. 45-5; Canela declaration, ECF No. 45-4; Bustamante declaration, ECF No. 45-8).)  Defendant Speer was employed as a correctional officer in the Investigatory Services Unit ("ISU") who conducted drug investigations throughout the institution and engaged in other tasks requested by the Warden.  (Id.)  Defendants Bustamante and Hang were assigned as correctional officers in A-Yard Building Three.  (Id.)  Defendants Ellis and Canela were assigned as correctional officers to A-Yard.  (Id.)

In response to defendants' undisputed fact no. 21, plaintiff states that he disagrees that defendants Ellis and Canela were assigned as correctional officers to A-yard. (ECF No. 48-2 at 14.)  Plaintiff states that "on information and belief," defendants Ellis and Canela were assigned to search and escort, with defendants Wallace, Vina and Freitas.  (Id.)  A claim based on information and belief is not sufficient to raise a triable issue of fact on summary judgment.  Schroeder v. McDonald, 55 F.3d 545, 460 (9th Cir. 1995).

Undisputed Fact No. 27:  Defendant Canela did not order any CDCR personnel to search plaintiff's cell and on the date of the search did not have the authority to do so. (ECF No. 45-2 at 7 (defendants' undisputed fact no. 27 citing Canela declaration, ECF No. 45-4 at 2); ECF No. 48-2 at 17 (plaintiff's response).)

In undisputed fact no. 27, defendants also contend that defendant Canela did not take any retaliatory actions toward plaintiff.  (ECF No. 45-2 at 7.)  Defendants also contend that defendant Canela's actions on August 9, 2019, were solely to fulfill his job duties to ensure the safety and security of the inmates, staff and institution in accordance with California Code of Regulations Title 15.  (Id.)  The undersigned addresses these claims herein.

Undisputed Fact No. 29:  Defendant Bustamante did not order any CDCR personnel to search plaintiff's cell and on the date of the search did not have the authority to do so. (ECF No. 45-2 at 8 (defendants' undisputed fact no. 29 citing Bustamante declaration,

ECF No. 45-8 at 2); ECF No. 48-2 at 17-18 (plaintiff's response).)

In undisputed fact no. 29, defendants also contend that defendant Bustamante did not take any retaliatory actions toward plaintiff.  (ECF No. 45-2 at 8.)  Defendants also contend that defendant Bustamante's actions on August 9, 2019, were solely to fulfill his job duties to ensure the safety and security of the inmates, staff and institution in accordance with California Code of Regulations Title 15.  (Id.)  The undersigned addresses these claims herein.

B.  Disputed Facts

Disputed Fact No. 16:  In undisputed fact no. 16, defendants claim that defendants Wallace, Vina and Freitas were the only defendants to search plaintiff's cell on August 9, 2019.  (ECF No. 48-2 at 11-12.)  Defendants claim that the purpose of the search was to determine whether contraband was within the cell.  (Id.)  Defendants claim that the cell search was conducted in accordance with applicable regulations.  (Id.)  Defendants also claim that contraband was confiscated from the cell, including a Panasonic radio and an inmate manufactured syringe.  (Id.)

For the reasons stated herein, the undersigned finds that defendants' undisputed fact no. 16 is largely disputed.

For the following reasons, the undersigned finds that whether defendant Wallace, Vina and Freitas were the only defendants to go into plaintiff's cell during the search is disputed.  As discussed above, in the verified complaint plaintiff alleges that he witnessed all defendants go into his cell during the time of the search.  Therefore, whether defendants Wallace, Vina and Freitas were the only defendants in plaintiff's cell during the time of the search is disputed.

For the following reasons, the undersigned finds that whether defendants conducted the search for the purpose of determining whether contraband was in the cell is disputed.  In support of undisputed fact no. 16, defendants cite the declarations of defendants Wallace and Vina at ¶ 2 and the cell search forms attached to their declarations as Exhibit A.  (ECF No. 45-2 at 5.)  In their declarations, defendants

12

1  Wallace and Vina state that the purpose of the August 9, 2019 cell search was to
2  determine whether contraband was within the cell.  (ECF Nos. 45-11 at 2; ECF No.
3  45-9 at 2.)  The cell search forms identify the contraband found during the search as
4  plaintiff's Panasonic radio, inmate manufactured syringe, excess state food, cardboard
5  and binder clips.  (ECF Nos. 45-9 at 4; 45-11 at 4.)  These forms contain the
6  signatures of defendants Freitas, Vina and Wallace.  (Id.)

7  For the following reasons, the undersigned finds that plaintiff presented evidence
8  suggesting that the syringe was planted, his cell was trashed during the search and that
9  his radio was wrongly deemed contraband.  Plaintiff also alleges that after the search,
10  defendant Wallace stated, "This is how we treat rats.  Get used to it."  Based on this
11  evidence, the undersigned finds that whether the purpose of the search was to locate
12  contraband is disputed.

13  In his response to undisputed fact no. 16, plaintiff cites his own declaration and the
14  declaration of his cellmate, inmate Machado attached to the opposition.  (ECF No. 48-
15  2 at 12.)  In their declarations, plaintiff and inmate Machado state that they saw
16  defendant Freitas enter their cell with a tube-like container containing a syringe.  (Id.
17  at 24, 33.)  In his declaration, inmate Machado states that he was later falsely charged
18  with possession of the syringe in a rules violation report.  (Id. at 34.)  Inmate Machado
19  states that defendant Freitas planted the syringe on his bunk.  (Id.)

20  Plaintiff and inmate Machado both state that after the search, inmate Machado
21  asked defendant Wallace why their cell was trashed.  (Id. at 25, 33-34.)  Defendant
22  Wallace responded, "This is how we treat rats.  Get used to it."  (Id. 25, 34.)

23  Plaintiff submitted the following evidence suggesting that his radio was not
24  contraband.  The Cell Search Forms attached as exhibit A to defendants' declarations
25  state that plaintiff's Panasonic radio was contraband because something on it was
26  broken.  (ECF No. 45-11 at 4.)  The section of the form describing what was broken is
27  illegible, although it may state "broken tapes."  (Id.)  As discussed above, defendants
28  Freitas, Vina and Wallace signed the form.  In their declarations, defendants Freitas,

13

Vina and Wallace do not address why plaintiff's radio was deemed contraband.  (ECF Nos. 45-10, 45-9, 45-11.)  Instead, they refer to the Cell Search Forms attached to their declarations.  (Id.)  In his declaration, defendant Speer states that he took possession of the radio after the search and deemed it contraband because it had a record button on it and, hidden under a sticker, another inmate's name and number were sanded off in violation of applicable regulations.  (ECF No. 45-7 at 2.)

In his opposition, plaintiff attaches a first level appeal response to grievance MCSP A-19-3319.  (ECF No. 48-2 at 42-43.)  This response states on August 29, 2019, at 1100 hours, defendant Vina told the grievance reviewer that Officer Speer confiscated plaintiff's radio due to it having broken seals.  (Id. at 43.)  The response states that on August 29, 2019, at 1200 hours, defendant Speer told the grievance reviewer that plaintiff's radio had a record button on it and a sticker with another inmate's name and number underneath scratched off.  (Id. at 43.)  The response states that on September 1, 2019, defendant Freitas told the grievance interviewer that the radio was taken due to the record button and sticker with another inmate's name and number sanded off underneath.  (Id.)

Plaintiff also attaches to his opposition a copy of an email dated August 29, 2019, from "Dobler" to defendant Speer stating that defendant Vina stated that the radio was confiscated because the tape was broken and it was not on the books.  (Id. at 73.)  Dobler then writes, "I pulled a property card and he has a Panasonic radio Ser. #3602." (Id.)

In his declaration, plaintiff also states that he possessed the confiscated Panasonic radio when he arrived at MCSP in May 2011.  (Id. at 26.)  Plaintiff alleges on or around May 23, 2011, Receiving and Release ("R & R") staff issued him his property, including the Panasonic radio.  (Id.)  Plaintiff contends that if his radio had a record button or sanded off name under the sticker, R & R would not have issued the radio to him.  (Id.)

Plaintiff's evidence demonstrates that defendants gave inconsistent and, possibly,

14

unsupported reasons for deeming his radio contraband. Without further explanation of these inconsistent and unsupported explanations for why they deemed plaintiff's radio contraband, the undersigned finds that defendants have not met their summary judgment burden of demonstrating that the radio was, in fact, contraband.[3]

Plaintiff's evidence suggesting that defendants planted the syringe, trashed his cell and falsely labeled his radio contraband, combined with defendant Wallace's alleged statement after the search ("This is how we treat rats. Get used to it.") is sufficient to create a dispute as to whether defendants' motive to search plaintiff's cell was to determine whether it contained contraband.[4]

In undisputed fact no. 16, defendants also claim that the search was "conducted in accordance with applicable regulations." Defendants do not identify the regulations to which they refer. For this reason, the undersigned finds defendants' statement that the search was conducted in accordance with applicable regulations is vague and unsupported.

Disputed Fact No. 17: In undisputed fact no. 17, defendants contend that as of August 9, 2019, defendant Vina had no knowledge of plaintiff's litigation or grievance history and, as of that date, defendant Vina had minimal if any contact with plaintiff. (ECF No. 45-2 at 5 (defendants' undisputed fact no. 17 citing Vina declaration, ECF No. 45-9 at 2).)

For the reasons discussed below in the section addressing defendants' arguments,

---

[3] At his deposition, plaintiff testified that the seals on his radio were not broken at the time of the search. (Plaintiff's deposition at 59:8-13.) Plaintiff also denied that his radio had another inmate's name sanded off the bottom. (Id. at 60: 18-22.) Plaintiff also testified that when he purchased the radio, he had to pay extra money to have the record function removed. (Id. at 61: 1-24.)

[4] The undersigned is puzzled by defendants' failure to explain why they believed there was contraband in plaintiff's cell on August 9, 2019. In his declaration, inmate Machado states that he filed a grievance against defendants for trashing his cell on August 9, 2019. (ECF No. 48-2 at 34.) Inmate Machado states that in response, Sergeant Junes falsely claimed that the search was conducted because someone had submitted an anonymous note indicating that his cell contained weapons. (Id.) Plaintiff asked Sergeant Junes to produce the note. (Id.) Sergeant Junes denied this request on the ground that the note was confidential. (Id.) Inmate Machado states that during his prison disciplinary hearing, the hearing officer refused to produce the anonymous note. (Id.) At trial, defendants may have to address the claim that the search of plaintiff's cell was conducted based on an anonymous note.

15

1    the undersigned finds that whether defendant Vina had knowledge of plaintiff's legal

2    activities on August 9, 2019 is disputed.

3    Disputed Fact No. 18:   In undisputed fact no. 18, defendants contend that as of August 9,

4    2019, defendant Freitas had no knowledge of plaintiff's litigation history or grievance

5    history.  (ECF No. 45-2 at 5 (defendants' undisputed fact no. 18 citing Freitas declaration,

6    ECF No. 45-10 at 2).)  Defendants contend that as of August 9, 2019, defendant Freitas

7    had minimal if any contact with plaintiff and does not recollect whether or not he had

8    spoken with plaintiff.  (Id.)  Defendants contend that plaintiff testified at his deposition

9    that he never spoke with defendant Freitas prior to August 9, 2019, and never discussed

10   his previous lawsuits with plaintiff.   (ECF No. ECF No. 45-2 at 5(defendants' undisputed

11   fact no. 18 citing plaintiff's deposition at 41:22-42:8).)

12        For the reasons discussed below in the section addressing defendants' arguments,

13   the undersigned finds that whether defendant Freitas had knowledge of plaintiff's legal

14   activities on August 9, 2019, is disputed.

15   Disputed Fact No. 19:   In undisputed fact no. 19, defendants contend that as of August 9,

16   2019, defendant Wallace had no knowledge of plaintiff's litigation against any CDCR

17   personnel and plaintiff had not filed a lawsuit against him.  (ECF No. 45-2 at 5

18   (defendants' undisputed fact no. 19 citing Wallace declaration, ECF No. 45-11 at 2).)

19        For the reasons discussed below in the section addressing defendants' arguments,

20   the undersigned finds that whether defendant Wallace had knowledge of plaintiff's legal

21   activities on August 9, 2019, is disputed.

22        Plaintiff does not dispute that as of August 9, 2019, plaintiff had not filed a lawsuit

23   against defendant Wallace.  (ECF No. 48-2 at 13-14.)

24   Disputed Fact No. 22:  In undisputed fact no. 22, defendants contend that on August 9,

25   2019, defendant Hang observed defendants Freitas, Vina and Wallace engaging in a

26   search of cell # 230 in building three.  (ECF No. 45-2 at 6 (defendants' undisputed fact no.

27   22 citing Hang declaration, ECF No. 45-6 at 1-2).)  Defendants contend that defendant

28   Hang secured one of the inmates assigned to that cell so the search could be conducted.

16

(Id.)  Defendants contend that defendant Hang does not recall which of the two inmates, plaintiff or inmate Machado, he secured that day, but does recall escorting that inmate to the C Shower section and searching him.  (Id.)  Defendants contend that following the search in the shower, defendant Hang locked the inmate in the shower while the search was conducted.  (Id.)  Defendants contend that defendant Hang could see that the cell was being searched but he did not search or enter the cell and did not process any items removed from the cell.  (Id.)

For the following reasons, the undersigned finds that whether defendant Hang participated in the search is disputed.

In response to defendants' undisputed fact no. 22, plaintiff states that he does not dispute that defendant Hang secured either plaintiff or inmate Machado in the shower on August 9, 2019.  (ECF No. 48-2 at 15.)  Plaintiff states that he disputes defendants' claim that defendant Hang did not participate in the search of his cell.  (Id.)  In their declarations, both plaintiff and inmate Machado state that they observed defendant Hang going in and out of their cell with defendants Bustamante, Ellis and Canela after they were secured in the C section shower.  (Id. at 24, 33.)  These allegations suggest that defendant Hang participated in the search of the cell.  Accordingly, the undersigned finds that whether defendant Hang participated in the search of plaintiff's cell is disputed.

Disputed Fact No. 23:  In undisputed fact no. 23, defendants contend that as of August 9, 2019, defendant Hang had no knowledge of plaintiff's litigation or grievance history.  (ECF No. 45-2 at 6 (defendants' undisputed fact no. 23 citing Hang declaration, ECF No. 45-6 at 2.)  Defendants contend that as of August 9, 2019, defendant Hang had minimal to no contact with plaintiff and had not discussed plaintiff's litigation or grievance history.  (Id.)  Defendants contend that at his deposition, plaintiff testified that he never discussed his lawsuits or grievances with defendant Hang.  (ECF No. 45-2 at 6-7 (defendants' undisputed fact no. 23 citing plaintiff's deposition at 55:24-56:7).

For the reasons discussed below in the section addressing defendants' arguments, the undersigned finds that whether defendant Hang had knowledge of plaintiff's legal

1    activities on August 9, 2019, is disputed.

2    <u>Disputed Fact No. 24:</u>   In undisputed fact no. 24, defendants contend that defendant Hang

3    did not search plaintiff's cell on August 9, 2019.  (ECF No. 45-2 at 7 (defendants'

4    undisputed fact no. 24 citing Hang declaration, ECF No. 45-6 at 2).)  Defendants contend

5    that defendant Hang did not have the authority to direct other CDCR personnel to search

6    plaintiff's cell.  (<u>Id.</u>)

7           As discussed above, whether defendant Hang participated in the search of

8    plaintiff's cell on August 9, 2019, is disputed.  In response to defendants' undisputed fact

9    no. 24, plaintiff does not dispute that defendant Hang did not have the authority to direct

10   other CDCR personnel staff to search plaintiff's cell.  (ECF No. 48-2 at 16.)  Accordingly,

11   this fact is undisputed.

12          In undisputed fact no. 24, defendants also contend that defendant Hang did not

13   take any retaliatory actions against plaintiff.  (ECF No. 45-2 at 7.)  Defendants contend

14   that defendant Hang's actions on August 9, 2019 were solely to fulfill his job duties to

15   ensure the safety and security of the inmates, staff, and institution in accordance with

16   California Code of Regulations Title 15.  (<u>Id.</u>)  The undersigned discusses these claims

17   herein.

18   <u>Disputed Fact No. 25:</u>  In undisputed fact no. 25, defendants contend that on August 9,

19   2019, defendant Canela observed defendants Freitas, Vina and Wallace engaging in a

20   search of cell # 230 in building three.  (ECF No. 45-2 at 7 (defendants' undisputed fact no.

21   25 citing Canela declaration, ECF No. 45-4 at 1-2).)  Defendants contend that defendant

22   Canela did not search or enter the cell on that date.  (<u>Id.</u>)  Defendants contend that during

23   the other officers' search of the cell, defendant Canela stood outside the cell, for security

24   purposes, and organized the items placed on the tier outside the cell that the other officers

25   had removed (<u>Id.</u>)

26          For the following reasons, the undersigned finds that whether defendant Canela

27   participated in the search of plaintiff's cell is disputed.  In their declarations, both plaintiff

28   and inmate Machado state that they saw defendant Canela going in and out of their cell

1    with defendants Hang, Ellis and Wallace.  (ECF No. 48-2 at 24, 33.)  In his declaration,

2    inmate Machado states that defendant Canela participated in the cell search.  (Id. at 33.)

3    These statements suggest that defendant Canela participated in the search of plaintiff's

4    cell.  Accordingly, whether defendant Canela participated in the search is disputed.

5    Disputed Fact No. 26:  In undisputed fact no. 26, defendants contend that as of August 9,

6    2019, defendant Canela had no knowledge of plaintiff's litigation or grievance history.

7    (ECF No. 45-2 at 7 (defendants' undisputed fact no. 26 citing Canela declaration, ECF

8    No. 45-4 at 2).)  Defendants contend that as of August 9, 2019, defendant Canela had

9    minimal to no contact with plaintiff and did not discuss plaintiff's litigation or grievance

10   history.  (Id.)

11          For the reasons discussed in the section below discussing defendants' arguments,

12   the undersigned finds that whether defendant Canela had knowledge of plaintiff's legal

13   activities on August 9, 2019 is disputed.

14   Disputed Fact No. 28:  In undisputed fact no. 28, defendants contend that on August 9,

15   2019, defendant Bustamante observed defendants Freitas, Vina and Wallace engaging in a

16   search of cell # 230 in Building 3.  (ECF No. 45-2 at 7-8 (defendants' undisputed fact no.

17   28 citing Bustamante declaration, ECF No. 45-8 at 2).)  Defendants contend that

18   defendant Bustamante secured inmate Machado, who was housed in that cell, into

19   handcuffs so staff could conduct the search.  (Id.)  Defendants contend that defendant

20   Bustamante escorted inmate Machado to the C-section upper shower where he searched

21   inmate Machado.  (Id.)  Defendants contend that defendant Bustamante locked inmate

22   Machado in the shower while his cell was searched.  (Id.)  Defendants contend that from

23   his vantage point in A-Yard Building three, defendant Bustamante could observe that cell

24   #230 was searched, however, he did not search or enter the cell and did not process any

25   items that were removed from the cell.  (Id.)

26          In response to defendants' undisputed fact no. 28, plaintiff does not dispute that

27   defendant Bustamante took inmate Machado to the shower and searched him.  (ECF No.

28   48-2 at 17.)  Accordingly, this fact is undisputed.

19

1    For the following reasons, the undersigned finds that whether defendant

2    Bustamante participated in the search of plaintiff's cell is disputed.  Both plaintiff and

3    inmate Machado state in their declarations attached to plaintiff's opposition that they saw

4    defendant Bustamante going in and out of his cell with defendants Hang, Ellis, Wallace

5    and Canela.  (ECF No. 48-2 at 24, 33.)  In his declaration, inmate Machado states that he

6    saw defendant Bustamante going in and out of the cell after he secured inmate Machado in

7    the shower.  (Id. at 33.)  These statements suggest that defendant Bustamante participated

8    in the search of plaintiff's cell.  Accordingly, whether defendant Bustamante participated

9    in the search is disputed.

10    Disputed Fact No. 30:  In undisputed fact no. 30, defendants contend that as of August 9,

11    2019, defendant Bustamante had not discussed plaintiff's previous legal actions or

12    grievances filed against him with any of the other defendants.  (ECF No. 48-2 at 18

13    (defendants' undisputed fact no. 30 citing Bustamante declaration, ECF No. 45-8 at 2).)

14    For the reasons discussed in the section below addressing defendants' arguments,

15    the undersigned finds that whether defendant Bustamante discussed plaintiff's previous

16    actions with any of the other defendants on or around the August 9, 2019 search is

17    disputed.

18    Disputed Fact No. 31:  In undisputed fact no. 31, defendants contend that on August 9,

19    2019, defendant Speer went to building three of A-yard regarding a matter unrelated to

20    this lawsuit.  (ECF No. 45-2 at 8 (defendants' undisputed fact no. 31 citing Speer

21    declaration, ECF No. 45-7 at 2).)  Defendants contend that when defendant Speer arrived,

22    he observed that cell # 230 was being searched and he approached the cell.  (Id.)

23    Defendants contend that one of the officers who was searching the cell gave him a radio,

24    which he was told was plaintiff's, to inspect to determine whether it was contraband.  (Id.)

25    Defendants contend that defendant Speer returned the radio to the ISU office and searched

26    it.  (Id.)  Defendants contend that the defendant Speer determined that the radio was

27    contraband because it had a record button on it and, hidden under a sticker, another

28    inmate's name and number were sanded off in violation of applicable regulations.  (Id.)

20

1          For the following reasons, the undersigned finds that whether defendant Speer

2     went to building three of A-yard on August 9, 2019, for a matter unrelated to this lawsuit

3     is disputed.  In his declaration submitted in support of his opposition, plaintiff alleges that

4     after he saw the other defendants go into his cell, he saw defendant Speer enter the

5     housing unit with plaintiff's property card in his hand.  (ECF No. 48-2 at 24.)  Plaintiff

6     alleges that defendant Speer went straight to plaintiff's cell when he entered the housing

7     unit.  (Id. at 25.)  While it is unclear how plaintiff was able to see that defendant Speer had

8     plaintiff's property card from where plaintiff was restrained in the shower, the

9     undersigned finds that plaintiff has presented sufficient evidence to create a dispute

10    regarding whether defendant Speer went to building three of A-yard for reasons unrelated

11    to the search of plaintiff's cell.

12         The undersigned also refers to the First Level Appeal Response to grievance no.

13    MCSP-A-19-3319 attached to plaintiff's opposition.  (Id. at 42-43.)  This response states

14    that Officer Vina stated that defendant Speer "had come over and assisted with the

15    searched [sic] and had confiscated the radio due to it having broken seals."  (Id.)  This

16    response suggests that defendant Speer's participation in the incident may have involved

17    more than merely confiscating the radio.

18         For the reasons discussed above, the undersigned also finds that whether plaintiff's

19    radio had a record button on it and, hidden under a sticker, another inmate's name and

20    number were sanded off, is disputed.

21    Disputed Fact No. 32:  In undisputed fact no. 32, defendants contend that as of August 9,

22    2019, defendant Speer had no knowledge of plaintiff's litigation or grievance history.

23    (ECF No. 45-2 at 9 (defendants' undisputed fact no. 32 citing Speer declaration, ECF No.

24    45-7 at 2).)  Defendants contend that as of August 9, 2019, defendant Speer did not know

25    of plaintiff.  (Id.)  Defendants contend that plaintiff testified at his deposition that before

26    August 9, 2019, he had never discussed his previous lawsuits with defendant Speer and

27    that after that date, he has not had any discussions with plaintiff regarding his lawsuits.

28    (ECF No. 45-2 at citing plaintiff's deposition at 57:12-25.)

1    For the reasons discussed in the section addressing defendants' legal arguments,

2    the undersigned finds that whether defendant Spear had knowledge of plaintiff's legal

3    activities on August 9, 2019 is disputed.

4    Disputed Fact No. 33:  In undisputed fact no. 33, defendants contend that on August 9,

5    2019, defendant Ellis did not search plaintiff's cell and she did not witness any search of

6    his cell on that date.  (ECF No. 45-2 at 9 (defendants' undisputed fact no. 33 citing Ellis

7    declaration, ECF No. 45-5).)

8    For the following reasons, the undersigned finds that whether defendant Ellis

9    participated in the August 9, 2019 search of plaintiff's cell is disputed.  As discussed

10   above, in his verified complaint plaintiff alleges that he saw defendant Ellis going in his

11   cell during the search.  In his declaration attached to his opposition, plaintiff also alleges

12   that he saw defendant Ellis going in and out of his cell.  (ECF 48-2 at 25.)  Accordingly,

13   the undersigned finds that whether defendant Ellis participated in the August 9, 2019

14   search of plaintiff's cell is disputed.

15   Disputed Fact No. 34:  In undisputed fact no. 34, defendants contend that as of August 9,

16   2019, defendant Ellis had no knowledge of plaintiff's litigation or grievance history.

17   (ECF No. 45-2 at 9 citing Ellis declaration at ECF No. 45-5).)  Defendants contend that as

18   of August 9, 2019, defendant Ellis did not know who plaintiff was and did not recall

19   whether she had any contact with him.  (Id.)  Defendants contend that as of August 9,

20   2019, defendant Ellis did not take any retaliatory actions toward plaintiff.  (Id.)

21   Defendants contend that defendant Ellis was unaware of the cell search until the day she

22   was made aware of this lawsuit.  (Id.)

23   For the reasons discussed in the section addressing defendants' arguments, the

24   undersigned finds that whether defendant Ellis had knowledge of plaintiff's legal activities

25   on August 9, 2019, is disputed.  The undersigned herein discusses claim that defendant

26   Ellis took no retaliatory actions against plaintiff on August 9, 2019.

27   ////

28   ////

22

1    V.    Plaintiff's Statement of Undisputed Facts

2         In his opposition, plaintiff includes a statement of plaintiff's 27 undisputed facts.  (ECF

3    No. 48-2 at 2-7.)  After reviewing plaintiff's statement of undisputed facts and defendants'

4    response, the undersigned finds that plaintiff's undisputed facts do not change the outcome of

5    defendants' summary judgment motion.  For that reason, the undersigned does not address

6    plaintiff's statement of undisputed facts.

7    VI.   Discussion of Plaintiff's Retaliation Claim

8         A.   Legal Standard for Retaliation Claim

9         A retaliation claim in the prison context has five elements.  Brodheim v. Cry, 584 F.3d

10   1262, 1269 (9th Cir. 2009); Watison v. Carter, 668 F.3d 1108, 1114 (2012).  First, the plaintiff

11   must allege he engaged in protected conduct, such as the filing of an inmate grievance.  Rhodes v.

12   Robinson, 408 F.3d 559, 567 (9th Cir. 2005).  Second, the plaintiff must allege the defendant took

13   adverse action against the plaintiff.  Id.  Third, the plaintiff must allege a causal connection

14   between the adverse action and the protected conduct.  Watison, 668 F.3d at 1114.  Fourth, the

15   plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness

16   from future First Amendment activities."  Rhodes, 408 F.3d at 568-69 (internal quotation marks

17   and emphasis omitted).  Fifth, the plaintiff must allege "that the prison authorities' retaliatory

18   action did not advance legitimate goals of the correctional institution or was not tailored narrowly

19   enough to achieve such goals."  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).  A plaintiff

20   successfully pleads a lack of valid penological purpose by alleging, in addition to a retaliatory

21   motive, that the defendant's actions were arbitrary and capricious or were unnecessary to the

22   maintenance of order in the institution.  Watison, 668 F.3d at 1114-15

23        B.   Clarification of Plaintiff's Retaliation Claim

24        In undisputed fact no. 8, defendants claim that plaintiff alleges that defendants retaliated

25   against him for filing previous lawsuits.  (ECF No. 45-2 at 3.)  In support of this claim,

26   defendants refer to plaintiff's deposition testimony where they asked plaintiff if he alleged that

27   defendants searched his cell on August 9, 2019, in retaliation for him filing lawsuits.  (Plaintiff's

28   deposition at 17: 3-7.)  Plaintiff responded, "Yes."  (Plaintiff's deposition at 17: 8.)

                                             23

1    In response to defendants' undisputed fact no. 8, plaintiff contends that defendants also

2    retaliated against him for filing grievances.  (ECF No. 48-2 at 9.)  In the reply to plaintiff's

3    opposition, defendants contend that plaintiff alleges only retaliation based on previous lawsuits,

4    citing the screening order.  (ECF No. 49-2 at 4-5.)  In the screening order, the undersigned wrote

5    that plaintiff alleged that defendants conspired to retaliate against him for filing lawsuits in which

6    he received monetary settlements.  (ECF No. 9 at 1-2.)

7    As discussed above, in the complaint, plaintiff identified several activities for which he

8    was allegedly retaliated against, including filing grievance MCSP A-1863 (challenging the

9    alleged May 18, 2019 retaliatory cell search) and legal activities by inmate Machado.  (ECF No. 8

10   at 11-12.)  However, in the opposition, plaintiff identifies the legal activities for which he was

11   retaliated against as his own lawsuits, i.e., cases 16-cv-2395, 18-cv-3001, 20-cv-32, and

12   grievances MCSP-A-18-79 (filed against defendant Bustamante regarding the February 17, 2018

13   cell search) and MCSP A-19-1863. (ECF No. 48 at 2-3.)  Therefore, plaintiff appears to have

14   abandoned his claim that he was retaliated against for inmate Machado's legal activities.

15   The undersigned observes that plaintiff filed case 2:20-cv-32 on January 3, 2020.[5]

16   Because plaintiff filed case 2:20-cv-32 after the August 9, 2019 search, plaintiff's cannot base the

17   retaliation claim raised in the instant action on case 2:20-cv-32.

18   Plaintiff's complaint does not allege that defendants retaliated against him for filing

19   grievance no. MCSP A-18-797.  Plaintiff may not amend his complaint by way of his opposition

20   to add a claim alleging that defendants retaliated against him for filing MCSP A-18-797.  See

21   Pickern v. Pier 1 Imports (U.S.), Inc., 454 F.3d 963, 969 (9th Cir. 2006) (refusing to consider new

22   allegations raised for the first time in opposition to motion for summary judgment because

23   opposition "failed to provide adequate notice" to defendants of new allegations).  Accordingly,

24   plaintiff's claims regarding MCSP A-18-797 are disregarded.

25   In the complaint, plaintiff identified grievance no. MCSP A-1863 as a grievance

26   defendants retaliated against him for filing.  (ECF No. 8 at 12.)  Although the screening order did

27

28   [5]  The undersigned takes judicial notice of plaintiff's complaint filed in case 2:20-cv-32.  Fed. R.
     Evid. 201; Lee v. City of Los Angeles, 250 F.3d 668, 688-90 (9th Cir. 2001).

not specifically identify plaintiff's grievance no. MCSP A-1862, plaintiff clearly alleged in the complaint that defendants retaliated against him for filing this grievance.  Plaintiff's deposition testimony does not preclude this claim because defendants did not specifically ask plaintiff whether this action was based on grievances in addition to lawsuits.

In the summary judgment motion, defendants do not address plaintiff's claim that they retaliated against him for filing grievance MCSP A-1862.  Accordingly, the undersigned does not address this claim in these findings and recommendations.

In summary, the undersigned herein considers whether defendants are entitled to summary judgment as to plaintiff's claim that the August 9, 2019 search of his cell was conducted in retaliation for his legal activities in cases 16-cv-2395 and 18-cv-3001.

C. Is There A Causal Connection Between August 9, 2019 Search and Plaintiff's Previous Legal Activity?

At the outset, based on the discussion of the undisputed and disputed facts, the undersigned finds that whether all defendants participated in the August 9, 2019 search is disputed.

Defendants move for summary judgment on the grounds that there is no causal connection between the August 9, 2019 search and plaintiff's lawsuits that resulted in monetary settlements. Defendants argue that the timing of the August 9, 2019 search indicates that it was not retaliatory. The undersigned addresses this argument herein.

Defendants argue that the timing of plaintiff's filing of the complaint in case 18-cv-3001 demonstrates that the August 9, 2019 search was not in retaliation for 18-cv-3001.  Court records reflect that on November 16, 2018, plaintiff filed the complaint in case 18-cv-3001 against defendant Bustamante and Officer Young regarding the February 2018 search.[6]  (case 2:18-cv-3001, ECF No. 1.)  On June 5, 2019, the court ordered service of the complaint on defendant Bustamante and Officer Young.  (2:18-cv-3001 at ECF No. 17.)  The returned USM-285 forms indicates the date of service for defendant Bustamante as August 2, 2019.  (2:18-cv-3001 at ECF

---

[6] The undersigned takes judicial notice of the record in case 2:18-cv-3001.  Fed. R. Evid. 201; Lee v. City of Los Angeles, 250 F.3d 668, 688-90 (9th Cir. 2001).

1    No. 21 at 2.)  Defendants filed an answer on August 12, 2019.  (2:18-cv-3001 at ECF No. 21.)

2    Based on this record, it appears that defendant Bustamante received notice of case 18-cv-3001

3    shortly before the August 9, 2019 search.  Based on the timing of defendant Bustamante's notice

4    of case 18-cv-3001, the undersigned finds that case 18-cv-3001 is evidence of a potentially

5    retaliatory motive by defendant Bustamante for the August 9, 2019 search.

6            Plaintiff also claims that defendants conducted the August 9, 2019 search in retaliation for

7    his receiving a monetary settlement in case 16-cv-2395.  Defendants do not dispute plaintiff's

8    claim that in February 2018, defendant Bustamante conducted a retaliatory cell search after

9    discovering plaintiff's settlement of case 16-cv-2395.  The August 9, 2019 search was conducted

10   approximately 1 ½ years after February 2018.  As discussed herein, plaintiff presents evidence

11   that the August 9, 2019 search was conducted in retaliation for his legal activities.  However, due

12   to the length of time between February 2018 and August 9, 2019, the undersigned finds that

13   defendant Bustamante's discovery of plaintiff's settlement of case 16-cv-2395 in February 2018

14   is not persuasive evidence for a retaliatory motive for the August 9, 2019 search.  See Coszalter v.

15   City of Salem, 320 F.3d 968, 977 (9th Cir. 2003) ("three to eight months is easily within a time

16   range that can support an inference of retaliation).

17           In the complaint, plaintiff also suggests that the May 18, 2019 search is evidence of

18   defendants' knowledge of his legal activities.  Plaintiff claims that defendants Bustamante and

19   Wallace participated in this search, during which his cell was trashed and allowable personal

20   property was confiscated.  Plaintiff claims that following the search, Sergeant Clay said, "you

21   guys keep crying to the courts, we'll keep going into your cell."

22           The record indicates that the only lawsuit filed by plaintiff of which defendants would

23   have been aware on May 18, 2019, was case 16-cv-2395, which plaintiff settled in January 2018.

24   Because the May 18, 2019 search occurred approximately 15 months after defendant Bustamante

25   learned of the settlement of case 16-cv-2395, the undersigned finds that the May 18, 2019 search

26   is not persuasive evidence of a retaliatory motive for the August 9, 2019 search.  Coszalter v. City

27   of Salem, 320 F.3d 968, 977 (9th Cir. 2003) ("three to eight months is easily within a time range

28   that can support an inference of retaliation.)  While plaintiff presents evidence suggesting that the

                                                    26

1    May 18, 2019 search was conducted in retaliation for legal activities, it seems more likely that

2    May 18, 2019 search was possibly conducted in retaliation for the legal activities of inmate

3    Machado.

4      For the reasons stated herein, the undersigned finds that whether defendants conducted the

5    August 9, 2019 search in retaliation for plaintiff's litigation of case 18-cv-3001 is a materially

6    disputed fact.

7      As discussed above, plaintiff presented evidence suggesting that the August 9, 2019

8    search was motivated by retaliation for his legal activities.  This evidence includes plaintiff's

9    evidence that defendants wrongly confiscated his radio and falsely labeled his radio contraband

10   and trashed his cell during the search.  Plaintiff presented evidence that after the search, defendant

11   Wallace allegedly stated, "This is how we treat rats.  Get used to it."[7]   Based on this evidence, it

12   is reasonable to infer that the defendants who participated in the search were motivated to

13   retaliate against plaintiff for plaintiff's legal activities.  Matsushita, 475 U.S. at 587 (all

14   reasonable inferences that may be drawn from the facts placed before the court must be drawn in

15   favor of the opposing party); Bruce v. Ylst, 351 F.3d 1283, 1288-89 (9th Cir. 2003) (a retaliatory

16   motive may be shown by the timing of the allegedly retaliatory act or other circumstantial

17   evidence, as well as direct evidence).

18     Plaintiff also alleges that defendants planted a syringe in his cell for which inmate

19   Machado was later charged with possession.  While the alleged planting of the syringe suggests

20   that defendants may have been motivated to retaliate against inmate Machado for inmate

21   Machado's legal activities, plaintiff presented sufficient evidence to create a dispute regarding

22   whether the search was also motivated by retaliation against plaintiff for his own legal activities.

23     As discussed above, the record suggests that at the time of the August 9, 2019 search,

24   defendant Bustamante had recently been served with case 18-cv-3001.  For the reasons stated

25   

26   [7]   In the summary judgment motion, defendants deny that defendant Wallace made the statement,
"This is how we treat rats.  Get used to it."  Defendants also argue that this statement does not
27   reference legal activity and is open to interpretation.  The undersigned finds that one reasonable
interpretation of this statement is that the search was conducted in retaliation for plaintiff's legal
28   activity.

1    herein, the undersigned finds that whether the remaining defendants knew of case 18-cv-3001 is

2    disputed.

3          As discussed above, plaintiff does not dispute that as of August 9, 2019, plaintiff had not

4    filed a lawsuit against defendant Wallace.  (ECF No. 48-2 at 13-14.)  The undersigned

5    acknowledges that at his deposition, as cited by defendants, plaintiff testified that before August

6    9, 2019, he could not recall having a conversation with defendants Freitas, Hang, Spear and Ellis

7    about his previous lawsuits.  (Plaintiff's deposition at 41:22-25-42: 1-8; 55:24-25-56:1-7; 57:12-

8    15; 47:2-11).

9          However, as discussed above, plaintiff's evidence suggests that defendants conducted the

10   August 9, 2019 search in retaliation for his legal activities.  The record suggests that shortly

11   before the August 9, 2019 search, defendant Bustamante received notice of case 18-cv-3001.

12   Therefore, it is reasonable to infer that defendant Bustamante told the other defendants about case

13   18-cv-3001 on or around the time of the August 9, 2019 search.  But for the recent service of case

14   18-cv-3001 on defendant Bustamante, the record contains no other explanation for why

15   defendants allegedly engaged in the retaliatory search of plaintiff's cell on August 9, 2019.

16         Defendants contend, and plaintiff does not dispute, that defendant Bustamante could not

17   have initiated the August 9, 2019 search because he did not have the authority, as a correctional

18   officer, to order other CDCR personnel to search plaintiff's cell.  The undersigned finds that

19   defendant Bustamante's lack of authority to order others to search plaintiff's cell does not

20   necessarily mean that defendant Bustamante did not have the ability to ask or encourage the other

21   defendants to participate in the search of plaintiff's cell.

22         In the summary judgment motion, defendants cite Cejas v. Paramo, 2017 WL 1166288, at

23   *6-7 (S.D. Cal. March 28, 2017), in support of their argument that the facts establish that

24   defendants Ellis, Freitas, Canela, Wallace, Speer, Vina and Hang did not have the requisite

25   knowledge of plaintiff's legal activities to substantiate his retaliation claim.  In Cejas, the court

26   found plaintiff failed to plead sufficient facts evidence demonstrating that defendant Jaime

27   searched plaintiff's cell in retaliation for plaintiff filing a grievance against defendant Rutledge.

28   Id. at *6.  The court found that plaintiff did not plead sufficient facts demonstrating that, at the

1  time he searched plaintiff's cell, defendant Jaime had knowledge of the grievance plaintiff

2  previously filed against defendant Rutledge or of the previous dispute between plaintiff and

3  defendant Rutledge.

4        The instant case is distinguishable from Cejas.  In the instant action, plaintiff has

5  presented evidence suggesting that the defendants who conducted the search were motivated to

6  retaliate against him for his legal activities, i.e., they trashed his cell, wrongly confiscated his

7  radio and labeled it contraband, and defendant Wallace stated, "This is how we treat rats.  Get

8  used to it."  While plaintiff has no direct evidence that defendants Ellis, Freitas, Canela, Wallace,

9  Speer, Vina and Hang knew of the recent service of case 18-cv-3001 on defendant Bustamante,

10  plaintiff presented sufficient circumstantial evidence from which it can reasonably be inferred

11  that the other defendants who participated in the search were motivated to retaliate against him

12  for his litigation of case 18-cv-3001 against defendant Bustamante.

13        In the summary judgment motion, defendants also cite Wood v. Yordy, 753 F.3d 899,

14  904-05 (9th Cir. 2014), for the proposition that plaintiff's speculation that defendants acted with a

15  retaliatory motive is not sufficient.  The undersigned finds that plaintiff's evidence that

16  defendants were motivated to retaliate against him for his legal activities is more than mere

17  speculation.

18        For the reasons discussed above, the undersigned finds that defendants are not entitled to

19  summary judgment on the grounds that there is no causal connection between August 9, 2019

20  search and plaintiff's previous legal activity.

21             D.  Did the Search Advance Legitimate Goals and/or Chill Plaintiff's First

22                  Amendment Rights?

23        Defendants move for summary judgment on the grounds that the August 9, 2019 search

24  advanced legitimate goals of MCSP and that plaintiff's First Amendment rights were not chilled.

25             *Did the Search Advance Legitimate Penological Goals?*

26        Defendants cite California Code of Regulations Title 15, section 3287(c), which states, in

27  part:  "Inspections of inmate cell or living areas, property, work areas, and body shall be

28  conducted on unannounced random basis as directed by the institution head."  Defendants appear

1 | to claim that the August 9, 2019 search was a random search pursuant to section 3287(c).

2 |      Cell searches advance legitimate penological goals because they are "essential to effective

3 | security of penal institutions." Hudson v. Palmer, 468 U.S. 517, 528 (1984).  However,

4 | defendants' declarations do not clearly state that the August 9, 2019 search was a random search

5 | pursuant to section 3287(c).  As discussed above, inmate Machado states in his declaration that he

6 | was informed that the August 9, 2019 search was conducted because someone submitted an

7 | anonymous note indicating that his cell contained weapons.  In addition, plaintiff presented

8 | evidence suggesting that defendants planted a syringe in his cell, wrongly confiscated his radio

9 | and labeled it contraband, trashed his cell during the search and that defendant Wallace stated

10 | after the search, "This is how we treat rats. Get used to it."  Based on this record, the undersigned

11 | cannot determine whether the purpose of the search was to advance legitimate penological

12 | objectives.  Accordingly, defendants are not entitled to summary judgment on these grounds.

13 |      *Did the August 9, 2019 Chill Plaintiff's First Amendment Activities?*

14 |      Defendants argue that the August 9, 2019 search did not chill plaintiff's ability to engage

15 | in First Amendment conduct.  Defendants argue that plaintiff and inmate Machado have filed

16 | several lawsuits over the years alleging similar retaliation.  Based on this conduct, defendants

17 | contend that there is no indication that plaintiff's rights have been chilled.

18 |      Plaintiff is not required to prove that his speech was actually inhibited or suppressed.

19 | Rhodes v. Robinson, 408 F.3d at 567-68.  Instead, plaintiff must show that defendants' conduct

20 | was such as would chill or silence a person of ordinary firmness from future First Amendment

21 | activities.  Id.  The undersigned finds that plaintiff's evidence suggesting that defendants planted

22 | a syringe in his cell (even if it was attributed to his cellmate), wrongly confiscated his radio and

23 | labeled it contraband, trashed his cell, combined with defendant Wallace's statement, "Get used

24 | to it.  This is how we treat rats," would chill or silence a person of ordinary firmness from future

25 | First Amendment activities.  Accordingly, defendants are not entitled to summary judgment on

26 | these grounds.

27 | ////

28 | ////

1    VII.    Conspiracy

2        *Legal Standard*

3        A conspiracy under 42 U.S.C. § 1983 is "a conspiracy to deprive a plaintiff of a

4    constitutional or federally protected right under color of state law." Dyess ex rel. Dyess, 2010

5    WL 3154083, at *7 (E.D. Cal. Aug. 6, 2010).  "To establish a conspiracy, a plaintiff must

6    demonstrate the existence of an agreement or 'meeting of the minds' to violate constitutional

7    rights." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999);

8    Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002).  "The defendants must have, by some

9    concerted action, intend[ed] to accomplish some unlawful objective for the purpose of harming

10   another which results in damage." Mendocino County, 192 F.3d at 1301.  This agreement or

11   meeting of the minds may be inferred on the basis of circumstantial evidence, such as the actions

12   of the defendants. Mendocino County, 192 F.3d at 1301.  A showing that defendants committed

13   acts that "are unlikely to have been undertaken without an agreement" may support the inference

14   of a conspiracy. Id.  Conclusory allegations of conspiracy, however, are not enough to support a

15   civil rights conspiracy claim.  See Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989).

16       *Discussion*

17       Defendants argue that plaintiff cannot prove an express or implied agreement among the

18   defendants.  Defendants argue that there is no evidence of any agreement.  Defendants argue that

19   defendants' declarations and plaintiff's deposition testimony establish that there is no evidence of

20   an agreement or shared knowledge of plaintiff's litigation activity.

21       As discussed above, plaintiff presented sufficient evidence to create a material dispute of

22   fact regarding whether all defendants participated in the August 9, 2019 search of his cell in

23   retaliation for defendant Bustamante's recent service with case 18-cv-3001.  An agreement by

24   defendants to retaliate against plaintiff for his legal activities is reasonably inferred based on this

25   evidence.  It is unlikely that defendants would have committed the alleged acts of retaliation

26   without an agreement to retaliate against plaintiff.  Accordingly, defendants' motion for summary

27   judgment as to plaintiff's conspiracy claim should be denied.

28   ////

31

1    VIII.   <u>Qualified Immunity</u>

2          *Legal Standard*

3          Government officials enjoy qualified immunity from civil damages unless their conduct

4    violates clearly established statutory or constitutional rights.  <u>Jeffers v. Gomez</u>, 267 F.3d 895, 910

5    (9th Cir. 2001) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  When a court is

6    presented with a qualified immunity defense, the central questions for the court are:  (1) whether

7    the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the

8    defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue

9    was "clearly established."  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001), receded from, <u>Pearson v.</u>

10   <u>Callahan</u>, 555 U.S. 223 (2009) (the two factors set out in <u>Saucier</u> need not be considered in

11   sequence).  "Qualified immunity gives government officials breathing room to make reasonable

12   but mistaken judgments about open legal questions."  <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 743

13   (2011).

14         "For the second step in the qualified immunity analysis—whether the constitutional right

15   was clearly established at the time of the conduct—the critical question is whether the contours of

16   the right were 'sufficiently clear' that every 'reasonable official would have understood that what

17   he is doing violates that right.'"  <u>Mattos v. Agarano</u>, 661 F.3d 433, 442 (9th Cir. 2011) (quoting

18   al-Kidd, 563 U.S. at 741) (some internal marks omitted).  "The plaintiff bears the burden to show

19   that the contours of the right were clearly established."  <u>Clairmont v. Sound Mental Health</u>, 632

20   F.3d 1091, 1109 (9th Cir. 2011).  "Whether the law was clearly established must be undertaken in

21   light of the specific context of the case, not as a broad general proposition."  <u>Estate of Ford v.</u>

22   <u>Ramirez-Palmer</u>, 301 F.3d 1043, 1050 (9th Cir. 2002) (citation and internal marks omitted).

23         *Discussion*

24         With respect to the first prong of the qualified immunity analysis, defendants argue that

25   plaintiff failed to establish that they violated his First Amendment rights by retaliating against

26   him.  Based on the discussion above, the undersigned finds that, taking the facts in the light most

27   favorable to plaintiff, defendants conducted the August 9, 2019 cell search in retaliation for his

28   legal activities.

1    With respect to the second prong of the qualified immunity analysis, defendants argue that

2    no reasonable officer would believe that searching plaintiff's cell in accordance with the

3    applicable regulations absent a retaliatory motive would violate plaintiff's constitutional rights.

4    Defendants also argue that no reasonable officer would believe that their conduct, as alleged by

5    defendants, violated plaintiff's constitutional rights.

6    Taking the facts in the lights most favorable to plaintiff, all defendants participated in the

7    August 9, 2019 search.  Taking the facts in the light most favorable to plaintiff, defendants

8    trashed his cell during the search, wrongly confiscated and labeled his radio contraband, planted a

9    syringe later attributed to his cellmate, and defendant Wallace made a statement suggesting that

10   the search was in retaliation for legal activities.  Taking the facts in the light most favorable to

11   plaintiff, no reasonable officer would believe that this conduct did not violate plaintiff's

12   constitutional rights.

13   For the reasons discussed above, the undersigned finds that defendants are not entitled to

14   qualified immunity.

15   Accordingly, IT IS ORDERED that the Clerk of the Court shall appoint a district judge to

16   this action; and

17   IT IS HEREBY RECOMMENDED that defendants' summary judgment motion (ECF

18   No. 45) be denied.

19   These findings and recommendations are submitted to the United States District Judge

20   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

21   after being served with these findings and recommendations, any party may file written

22   objections with the court and serve a copy on all parties.  Such a document should be captioned

23   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

24   objections shall be filed and served within fourteen days after service of the objections.  The

25   ////

26   ////

27   ////

28   ////

33

1   parties are advised that failure to file objections within the specified time may waive the right to

2   appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3   Dated:  June 13, 2023

4

5   _____
    KENDALL J. NEWMAN
6   UNITED STATES MAGISTRATE JUDGE

7

8

9   Kah1807.sj

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28